UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ANGELA MILLARD,

       Plaintiff,

v.                    3:12-CV-1464
                      (GTS)
CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.
_____

APPEARANCES:              OF COUNSEL:

OLINSKY LAW GROUP           HOWARD D. OLINSKY, ESQ.
  Counsel for Plaintiff
300 S. State Street, Suite 420
Syracuse, NY 13202

U.S. SOCIAL SECURITY ADMIN.        BENIL ABRAHAM, ESQ.
OFFICE OF REG'L GEN. COUNSEL – REGION II  REBECCA H. ESTELLE, ESQ.
  Counsel for Defendant
26 Federal Plaza, Room 3904
New York, NY 10278

GLENN T. SUDDABY, Chief United States District Judge

## DECISION and ORDER

   Currently before the Court, in this Social Security action filed by Regina M. Taylor, on behalf of her daughter, Angela Millard ("Plaintiff"), against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-motions for judgment on the pleadings. (Dkt. Nos. 12, 16.) For the reasons set forth below, Plaintiff's motion for judgment on the pleadings is denied and Defendant's motion for judgment on the pleadings is granted.

I.     RELEVANT BACKGROUND

   A.     Factual Background

Plaintiff was born on October 26, 1993.  At the time of the hearing, Plaintiff was in the 11th grade.  Generally, Plaintiff's alleged impairments are a learning disability, attention deficit disorder with hyperactivity ("ADHD"), and mood changes.

   B.     Procedural History

On December 21, 2009, Plaintiff's mother filed an application for Supplemental Security Income on behalf of Plaintiff, a minor.  Plaintiff's application was initially denied on February 17, 2010, after which she timely requested a hearing before an Administrative Law Judge ("ALJ").  On January 25, 2011, Plaintiff and her mother appeared in a video hearing before the ALJ, F. Patrick Flanagan.  (T. 38-61.)  On March 11, 2011, the ALJ issued a written decision finding Plaintiff not disabled under the Social Security Act.  (T. 15-36.)  On July 26, 2012, the Appeals Council denied Plaintiff's request for review, rendering the ALJ's decision the final decision of the Commissioner.  (T. 1-4.)  Thereafter, Plaintiff timely sought judicial review in this Court.

   C.     The ALJ's Decision

Generally, in his decision, the ALJ made the following six findings of fact and conclusions of law.  (T. 21-32.)  First, the ALJ found that Plaintiff was a "school age child" pursuant to 20 C.F.R. § 416.926a(g)(2) on December 21, 2009, the date the application for benefits was filed, and was an "adolescent" on March 11, 2011, the date of the ALJ's decision.  (T. 21.)  Second, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date the application for benefits was filed.  (*Id.*)  Third, the ALJ found that Plaintiff's learning disability was a severe impairment, but that Plaintiff's ganglion cyst of the left wrist, right ankle pain, and ADHD were not severe impairments.  (T. 21-22.)  Fourth, the ALJ found that Plaintiff

does not have an impairment, or combination of impairments, that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"). (T. 22.) The ALJ considered Listing 112.02A9. (*Id.*) Fifth, the ALJ found that Plaintiff does not have an impairment, or combination of impairments, that functionally equals an impairment set forth in the Listings. (T. 22-32.) Sixth, and finally, the ALJ found that Plaintiff has not been disabled, as defined by the Social Security Act, since December 21, 2009, the date her application was filed. (T. 32.)

### D. The Parties' Briefings on Their Cross-Motions

Plaintiff makes five arguments in support of her motion for judgment on the pleadings. First, Plaintiff argues that the ALJ erred by not obtaining Plaintiff's updated educational records. (Dkt. No. 12, at 8-10 [Pl.'s Mem. of Law].) Second, Plaintiff argues that the ALJ erred by affording some weight to the opinion of treating physician, Josh Goodrum, D.O. (*Id.* at 10-12.) Third, Plaintiff argues that the ALJ erred by affording little weight to the opinion of Plaintiff's mother. (*Id.* at 12-16.) Fourth, Plaintiff argues that the ALJ's credibility assessment was unsupported by substantial evidence because the ALJ erred in considering the required factors. (*Id.* at 16-17.) Fifth, and finally, Plaintiff argues that the ALJ's determination that Plaintiff's impairment was not functionally equivalent to the Listings was unsupported by substantial evidence. (*Id.* at 17-23.)

Defendant makes three arguments in support of her motion for judgment on the pleadings. First, Defendant argues that substantial evidence supports the Commissioner's decision that Plaintiff was not disabled and, therefore, the decision must be affirmed. (Dkt. No. 16, at 1-11 [Def.'s Mem. of Law].) Second, Defendant argues that the ALJ properly developed the record and was not required to order additional educational records. (*Id.* at 4-5.) Third, and finally,

Defendant argues that the ALJ properly concluded that Plaintiff had a marked, not extreme, limitation in the domain of acquiring and using information. (*Id.* at 5-11.) Within this argument, Defendant argues that substantial evidence supported (1) the ALJ's assessment of Dr. Goodrum's opinion, (2) the ALJ's assessment of Plaintiff's mother's testimony, and (3) the ALJ's credibility analysis. (*Id.* at 7-11.)

## II.   RELEVANT LEGAL STANDARD

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. 42 U.S.C. § 405(g); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will be reversed only if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *accord, Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides,

4

because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

An individual under the age of 18 is disabled, and thus eligible for Social Security Income benefits, if he or she has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(C)(i). However, that definitional provision excludes from coverage any "individual under the age of 18 who engages in substantial gainful activity . . . ." 42 U.S.C. § 1382c(a)(3)(C)(ii).

By regulation, the agency has prescribed a three-step evaluative process to determine whether a child can meet the statutory definition of disability. 20 C.F.R. § 416.924; *Kittles v. Barnhart*, 245 F. Supp. 2d 479, 487-88 (E.D.N.Y. 2003); *Ramos v. Barnhart*, 02-CV-3127, 2003 WL 21032012, at *7 (S.D.N.Y. May 6, 2003). The first step of the test, which bears some similarity to the five-step analysis employed in adult disability cases, requires determining whether the child has engaged in substantial gainful activity. 20 C.F.R. § 416.924(b); *Kittles*, 245

5

F. Supp. 2d at 488. If so, then the child is ineligible for Social Security Income benefits. 42 U.S.C. § 1382c(a)(3)(C)(ii); 20 C.F.R. § 416.924(b).

If the child has not engaged in substantial gainful activity, the second step of the test requires examining whether the child suffers from one or more medically determinable impairments that, either singly or in combination, are properly regarded as severe because they cause more than a minimal functional limitation. 20 C.F.R. § 416.924(c); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. In essence, a child is disabled under the Social Security Act "if his impairment is as severe as one that would prevent an adult from working." *Sullivan v. Zebley*, 493 U.S. 521, 529, 110 S. Ct. 885, 890 (1990).

If a severe impairment exists, the third step requires determining whether the child meets or equals a presumptively disabling condition identified in the Listings set forth under 20 C.F.R. Pt. 404, Subpt. P., App. 1. 20 C.F.R. § 416.924(d); *Zebley,* 493 U.S. at 526. Equivalence to a Listing can be either medical or functional. 20 C.F.R. § 416.924(d); *Kittles*, 245 F. Supp. 2d at 488; *Ramos*, 2003 WL 21032012, at *7. If an impairment is found to meet, or qualify as medically or functionally equivalent to, a listed disability and the 12-month durational requirement is satisfied, the claimant will be deemed disabled. 20 C.F.R. § 416.924(d)(1); *Ramos*, 2003 WL 21032012, at *8.

Analysis of functionality considers how a claimant functions in six main areas referred to as "domains." 20 C.F.R. § 416.926a(b)(1); *Ramos*, 2003 WL 21032012, at *8. The domains are described as "broad areas of functioning intended to capture all of what a child can or cannot do." 20 C.F.R. § 416.926a(b)(1). Those domains include the following: (i) acquiring and using information; (ii) attending and completing tasks; (iii) interacting and relating with others; (iv) moving about and manipulating objects; (v) caring for oneself; and (vi) health and physical well-being. 20 C.F.R. § 416.926a(b)(1).

6

Functional equivalence is established if the child is determined to have an "extreme," or "more than marked," limitation in a single domain. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. An "extreme limitation" is an impairment that "interferes very seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3)(i).

Alternatively, a finding of disability is warranted if a "marked" limitation is found in any two of the listed domains. 20 C.F.R. § 416.926a(a); *Ramos*, 2003 WL 21032012, at *8. A "marked limitation" exists when the impairment "interferes seriously with [a claimant's] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2)(i). A marked limitation "may arise when several activities or functions are impaired, or even when only one is impaired, as long as the degree of limitation is such as to interfere seriously with the ability to function (based upon age-appropriate expectations) independently, appropriately, effectively, and on a sustained basis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 112.00(C).

## III. ANALYSIS

For ease of analysis, Plaintiff's arguments have been reorganized and consolidated below.

### A. Whether the ALJ Was Required to Obtain Updated Educational Records

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 4-5 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ has an affirmative duty to develop the administrative record. 20 C.F.R. § 416.912(d); *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508-09 (2d Cir. 2009). By statute, an ALJ is required to develop a claimant's complete medical history for at least the 12-month

period before an application for benefits was filed, and for a longer period when there is reason to believe that additional information is necessary to reach a decision. *DeChirico v. Callahan*, 134 F.3d 1177, 1184 (2d Cir. 1998). This duty exists even when a plaintiff is represented by counsel, due to the "non-adversarial nature of a benefits proceeding." *Lamay*, 562 F.3d at 509.

However, an ALJ is not required to seek additional information when there are no "obvious gaps" in the administrative record that preclude making an informed decision. *Bushey v. Colvin*, 552 F. App'x 97, 98 (2d Cir. 2014); *Rosa v. Callahan*, 168 F.3d 72, 80 (2d Cir. 1999).

Plaintiff argues that the ALJ failed to develop the record by not obtaining updated educational records, specifically (1) Plaintiff's high school transcript and (2) Plaintiff's Committee of Special Education ("CSE") report. (Dkt. No. 12, at 8 [Pl.'s Mem. of Law].) However, at the hearing on January 25, 2011, the record contained (1) Plaintiff's high school transcript, dated November 5, 2010 (less than three months old), and (2) Plaintiff's CSE report, dated February 16, 2010, (less than one year old). (T. 171-88.)

Additionally, the record contained (1) the opinion of State agency pediatrician, Dr. Randall, rendered on February 16, 2010, (2) the opinion of consultative psychological examiner, Dennis Noia, Ph.D., rendered on February 9, 2010, and (3) the psychological evaluation of school psychologist, Andrea Roberts, rendered on May 21, 2009, including Plaintiff's full scale intelligence quotient (IQ) score of 102 (55th percentile). (T. 23-26, 41.) In the Second Circuit, it is reasonable to presume, in the absence of evidence indicating otherwise, that a claimant will have a fairly constant IQ throughout his or her lifetime. *Talavera v. Astrue*, 697 F.3d 145, 152 (2d Cir. 2012); *Jackson v. Colvin,* 14-CV-0756, 2015 WL 5005740, at *3 (N.D.N.Y. Aug. 20, 2015); *Lyons v. Colvin,* 13-CV-0614, 2014 WL 4826789, at * 11 (N.D.N.Y. Sept. 29, 2014).

Here, there is no indication that Plaintiff advised the ALJ that additional education information was forthcoming. Further, Plaintiff did not indicate that there was reason to believe that additional information would show a decline in Plaintiff's functioning. To the contrary, Plaintiff testified that, even though she had been sick and missed a lot of school, her grades had been "okay." (T. 48-50.) Accordingly, the Court finds that there were no "obvious gaps" in the administrative record that precluded the ALJ from making an informed decision based on the current record. *Bushey*, 552 F. App'x at 98.

Therefore, the ALJ was not required to obtain additional educational records, and remand is not required on this basis.

> **B.     Whether the ALJ Erred in Assessing the Opinion of Treating Primary Care Physician, Josh Goodrum, D.O.**

After carefully considering the matter, the Court answers this question in the negative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 7-9 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

Under the "treating physician's rule," controlling weight is afforded to a plaintiff's treating physician's opinion when (1) the opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques, and (2) the opinion is consistent with other substantial evidence in the record, such as opinions of other medical experts. 20 C.F.R. § 416.927(c)(2); *Halloran v. Barnhart*, 362 F.3d 28, 31-32 (2d Cir. 2004); *Brogan-Dawley v. Astrue*, 484 F. App'x 632, 633-34 (2d Cir. 2012). Regulations require an ALJ to set forth his or her reasons for the weight afforded to a treating physician's opinion. *Shaw v. Chater*, 221 F.3d 126, 134 (2d Cir. 2000).

When controlling weight is not afforded to the opinion of a treating physician, or when assessing medical opinions from another source, the ALJ should consider the following factors to determine the proper weight to afford the opinion: (1) the source's examination relationship and treatment relationship, including the length, nature, and extent of the treatment relationship, (2) the opinion's supportability, (3) the opinion's consistency with the record as a whole, (4) the source's specialization, if any, and (5) other factors, such as the source's knowledge of disability programs and familiarity with the case record. 20 C.F.R. § 416.927(c); *Halloran*, 362 F.3d at 32 (listing regulatory factors).

On November 17, 2010, Dr. Goodrum completed a childhood disability evaluation form assessing Plaintiff's functioning in the childhood domains. (T. 316-17.) Dr. Goodrum opined that Plaintiff had "extreme" limitation in the domain of attending and using information, and "no evidence of limitation" in the other five domains of functioning. (T. 316.) Dr. Goodrum stated that Plaintiff was unable to comprehend anything she reads and had very limited short term recall after reading. (T. 317.) Dr. Goodrum stated that, in school, Plaintiff had very limited reading comprehension and required a special computer to help her pronounce words. (*Id.*)

The ALJ afforded some weight to Dr. Goodrum's opinion, reasoning that Dr. Goodrum is Plaintiff's primary care physician and his treatment records indicated that he did not treat Plaintiff for problems with her cognitive functioning. (T. 25.) The ALJ further noted that Dr. Goodrum's opinion appears to be based solely on Plaintiff's self-report. (*Id.*) The ALJ cited other substantial evidence of record that was inconsistent with Dr. Goodrum's opinion, including (1) the opinion of State agency pediatrician, Dr. Randall, rendered on February 16, 2010, (2) the opinion of consultative psychological examiner, Dennis Noia, Ph.D., rendered on February 9, 2010, and (3) the psychological evaluation of school psychologist, Andrea Roberts, rendered on May 21, 2009. (T. 24-26.)

10

The ALJ noted that, though Dr. Goodrum opined that Plaintiff had an "extreme" limitation in the domain of acquiring and using information, Dr. Randall opined that Plaintiff's limitation in the domain was "less than marked." (T. 26.) The ALJ noted that Dr. Noia opined that Plaintiff could (1) attend to, follow, and understand many age appropriate directions, (2) complete many age appropriate tasks, and (3) learn at her level of cognitive functioning. (T. 24.) The ALJ further noted that Dr. Noia found, in pertinent part, that Plaintiff's recent and remote memory skills were intact, and observed that Plaintiff could recall three objects immediately and after five minutes, and could restate four digits forwards and four digits backwards. (T. 26.) Finally, the ALJ noted that Ms. Roberts indicated that Plaintiff's cognitive abilities were average with a full scale IQ score of 102, and that Plaintiff was in a fully inclusive 11th grade classroom. (T. 23, 26.)

The ALJ properly applied the regulations in evaluating Dr. Goodrum's opinion. As discussed above, the ALJ considered Dr. Goodrum's professional credentials, treating relationship with Plaintiff, treatment notes, and cited inconsistencies between the opinion and other substantial evidence of record pursuant to 20 C.F.R. § 416.927(c). (T. 17-23.) Where, as here, an ALJ's reasoning and adherence to the regulations are clear, an ALJ is not required to review explicitly each and every factor of the regulation. *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) (holding that, where plaintiff challenged ALJ's failure to review explicitly each factor provided for in 20 C.F.R. § 404.1527[c], "no such slavish recitation of each and every factor [was required] where the ALJ's reasoning and adherence to the regulation [was] clear").

Moreover, an ALJ is entitled to rely upon the opinions of both examining and non-examining State agency medical consultants, because those consultants are deemed to be qualified experts in the field of social security disability. 20 C.F.R. § 416.912(b)(6), 416.913(c),

416.927(e); *see also Little v. Colvin*, 14-CV-0063, 2015 WL 1399586, at *9 (N.D.N.Y. Mar. 26, 2015) ("State agency physicians are qualified as experts in the evaluation of medical issues in disability claims. As such, their opinions may constitute substantial evidence if they are consistent with the record as a whole.")

For these reasons, the ALJ's assessment of Dr. Goodrum's opinion was supported by substantial evidence, and remand is not required on this basis.

**C.     Whether the ALJ's Determination that Plaintiff's Impairment Was Not Functionally Equivalent to the Listings Was Supported by Substantial Evidence**

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 5-11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

The ALJ found that Plaintiff does not have an impairment or combination of impairments that functionally equals an impairment set forth in the Listings. (T. 22-32.) Functional equivalence to a Listing is established where there is a finding of an extreme limitation in one domain of functioning or a finding of a marked limitation in two domains. 20 C.F.R. § 926a(a).

**i.     Acquiring and Using Information**

In assessing a child's functioning in the domain of acquiring and using information, the ALJ considers how well the child learns information, and how well she uses the information she has learned. 20 C.F.R. § 416.926a(g).

The regulations provide that a school-age child (*i.e.*, a child between age six and attainment of age 12) should be able to learn to read, write, and do math, and discuss history and science. 20 C.F.R. § 416.926a(g)(2)(iv). Additionally, a school-age child should be able to use increasingly complex language (vocabulary and grammar) to share information and ideas with

12

individuals or groups, by asking questions and expressing her own ideas, and by understanding and responding to the opinions of others. *Id.*

The regulations provide that an adolescent (*i.e.*, a child age 12 to attainment of age 18) in middle and high school should continue to demonstrate what she has learned in academic assignments (*i.e.*, composition, classroom discussion, and laboratory experiments). 20 C.F.R. § 416.926a (g)(2)(v). The child should be able to use what she has learned in daily living situations without assistance (*i.e.,* going to the store, using the library, and using public transportation). *Id.* The child should be able to comprehend and express both simple and complex ideas, use increasingly complex language (vocabulary and grammar) in learning and daily living situations (*i.e.*, to obtain and convey information and ideas). *Id.* The child should also learn to apply these skills in practical ways that will help her enter the workplace after finishing school (*i.e.*, carrying out instructions, preparing a job application, or being interviewed by a potential employer). *Id.*

Some examples of limited functioning in this domain are when a child: (i) does not demonstrate understanding of words about space, size, or time (*i.e.*, in/under, big/little, morning/night); (ii) cannot rhyme words or the sounds in words; (iii) has difficulty recalling important things learned in school yesterday; (iv) has difficulty solving mathematics questions or computing arithmetic answers; or (v) talks only in short, simple sentences and has difficulty explaining what she means. 20 C.F.R. § 416.926a(g)(3). These examples do not apply to a particular age group, but cover a range of ages and developmental periods. *Id.* Additionally, the examples do not necessarily describe a "marked" or "extreme" limitation in the domain. *Id.*

The ALJ determined that Plaintiff has a marked limitation in the domain of acquiring and using information. (T. 26.) The ALJ noted that Ms. Roberts found that Plaintiff had significant

weakness with working memory, and that her score of 80 (ninth percentile, low average range) indicated that she had a difficult time taking in information, processing it, storing it in her memory, and retrieving it again within a short period of time. (*Id.*)

The ALJ noted that Dr. Noia opined, in pertinent part, that Plaintiff's recent and remote memory skills were intact, and observed that Plaintiff could recall three objects immediately and after five minutes, and could restate four digits forwards and four digits backwards. (*Id.*) The ALJ noted that Dr. Noia opined that Plaintiff could (1) attend to, follow, and understand many age appropriate directions, (2) complete many age appropriate tasks, and (3) learn at her level of cognitive functioning. (T. 24.)

The ALJ noted that, though Dr. Goodrum opined that Plaintiff had an "extreme" limitation in the domain of acquiring and using information, Dr. Randall opined that Plaintiff's limitation in the domain was "less than marked." (T. 26.) Finally, the ALJ noted that Ms. Roberts indicated that Plaintiff's cognitive abilities were average with a full scale intelligence quotient (IQ) score of 102, and that Plaintiff was in a fully inclusive 11th grade classroom. (T. 23, 26.) The ALJ reasoned that, an extreme limitation in this domain

> suggests overwhelming limitations, which are not supported by her regular education placement, average IQ and use of adaptive devices to address her impairment. With these devices, the claimant reports that her grades are 'okay.' The claimant was an articulate young woman who was quite able to respond appropriately to questioning.

(T. 26.)

For these reasons, the Court finds that the ALJ's conclusion as to this domain is supported by substantial evidence. Therefore, remand is not necessary on this basis.

14

### D. Whether the ALJ's Credibility Determination Was Supported by Substantial Evidence

After carefully considering the matter, the Court answers this question in the affirmative for the reasons stated in Defendant's memorandum of law. (Dkt. No. 16, at 5-11 [Def.'s Mem. of Law].) To those reasons, the Court adds the following analysis.

As a fact finder, the ALJ is free to accept or reject the testimony of a claimant's parent. *Williams on behalf of Williams v. Bowen,* 859 F.2d 255, 260 (2d Cir. 1988). However, an ALJ's finding that a witness lacks credibility must be "set forth with sufficient specificity to permit intelligible plenary review of the record." *Williams,* 859 F.2d at 261. "If the child claimant is unable adequately to describe his symptoms, the ALJ must accept the description provided by testimony of the person most familiar with the child's condition, such as a parent." *Hamedallah ex rel. E.B. v. Astrue*, 876 F. Supp. 2d 133, 151-52 (N.D.N.Y. 2012) (citing *Jefferson v. Barnhart*, 64 F. App'x 136, 140 [10th Cir. 2003]). "In such a case, the ALJ must make specific findings concerning the credibility of the parent's testimony, just as he would if the child was testifying." *Hamedallah,* 876 F. Supp. 2d at 152.

A plaintiff's allegation of pain is "entitled to great weight where . . . it is supported by objective medical evidence." *Rockwood v. Astrue*, 614 F. Supp. 2d 252, 270 (N.D.N.Y. 2009) (quoting *Simmons v. U.S. R.R. Ret. Bd.*, 982 F.2d 49, 56 [2d Cir. 1992]). However, the ALJ "is not required to accept [a plaintiff's] subjective complaints without question; he may exercise discretion in weighing the credibility of the [plaintiff's] testimony in light of the other evidence in the record." *Montaldo v. Astrue*, 10-CV-6163, 2012 WL 893186, at *17 (S.D.N.Y. Mar. 15 2012). "When rejecting subjective complaints, an ALJ must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." *Rockwood*, 614 F. Supp. 2d at 270.

"The ALJ's credibility assessment must be based on a two step analysis of pertinent evidence in the record. First, the ALJ must determine whether the claimant has medically determinable impairments, which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* at 271.

> Second, if medically determinable impairments are shown, then the ALJ must evaluate the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limit the claimant's capacity to work. Because an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, an ALJ will consider the following factors in assessing a claimant's credibility: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.

*Id.* Further, "[i]t is the role of the Commissioner, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses,' including with respect to the severity of a claimant's symptoms." *Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. 2013) (quoting *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 [2d Cir. 1983]).

Plaintiff argues that the ALJ erred in his credibility analysis because he (1) did not determine whether Plaintiff's learning disorder could reasonably be expected to produce her symptoms, as required by step one of the two-step credibility analysis, (2) did not state that he considered specific parts of Plaintiff's testimony, (3) should have afforded more than "little weight" to Plaintiff's mother's testimony, and (4) did not consider the required factors. (Dkt. No. 12, at 12-19 [Pl.'s Mem. of Law].)

Here, the ALJ set forth the two-step credibility assessment process required under the regulations and stated that he considered "all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence based on the requirements of 20 CFR 416.929, SSRs 96-4p and 96-7p." (T. 23.) As a result, the ALJ found that, regarding Plaintiff's alleged learning disability and attention deficit disorder, the "record does not support the level of severity alleged by Plaintiff." (*Id.*) Having reviewed the Administrative Transcript in its entirety, the Court finds that the ALJ correctly applied the standard, enumerated in 20 C.F.R. § 416.929(c)(3)(i)-(vii), in assessing allegations of Plaintiff's disabling symptoms and their limiting effects. Throughout the decision, the ALJ articulated the inconsistencies that he considered in assessing the allegations of Plaintiff's symptoms, and in determining that Plaintiff is not as limited as alleged.

First, the ALJ considered testimony from Plaintiff and Plaintiff's mother regarding Plaintiff's symptoms. (T. 24.) The ALJ noted that Plaintiff's mother testified that Plaintiff could read simple words but would have a difficult time distinguishing cleaning products from each other because of her problems reading. (*Id.*) The ALJ noted that both Plaintiff and her mother testified that Plaintiff had trouble text messaging with her friends. (*Id.*) The ALJ found that Plaintiff was "an articulate young woman who was quite able to respond appropriately to questioning." (T. 26.)

The ALJ afforded little weight to the statements of Plaintiff's mother. (T. 23.) The ALJ reasoned that, "as a party close to the claimant one would anticipate that she would support the allegations, as a party who sympathizes with the claimant." (*Id.*) The ALJ further reasoned that Plaintiff's mother "does not have the medical expertise to render a qualified opinion on the claimant's true functional limitations." (*Id.*) Moreover, the ALJ noted Plaintiff's mother did not

17

report any significant attention deficit symptoms, or symptoms of a formal thought disorder or cognitive dysfunction to Dr. Noia. (*Id.*)

Second, the ALJ cited evidence from examining sources that was inconsistent with allegations of Plaintiff's disabling symptoms, including the opinions of Dr. Randall, Dr. Noia, and Ms. Roberts, discussed in Parts III.B. and III.C. of this Decision and Order. (T. 24-26.) The ALJ noted that Dr. Randall opined that Plaintiff had "less than marked" limitation in the domain of acquiring and using information. (T. 26.) The ALJ noted that school psychologist, Ms. Roberts indicated that Plaintiff's cognitive abilities were average with a full scale IQ score of 102. (T. 23.)

Further, The ALJ noted that Dr. Noia found, in pertinent part, that Plaintiff's recent and remote memory skills were intact, and observed that Plaintiff could recall three objects immediately and after five minutes, could restate four digits forwards and four digits backwards. (T. 26.) The ALJ noted that Dr. Noia opined that Plaintiff could (1) attend to, follow, and understand many age appropriate directions, (2) complete many age appropriate tasks, and (3) learn at her level of cognitive functioning. (T. 24.)

Third, the ALJ considered other measures taken by Plaintiff to relieve her symptoms. (T. 23.) More specifically, the ALJ considered Plaintiff's academic success with accommodations and use of adaptive devices to address her impairment. (T. 26.) The ALJ noted that, with these devices, Plaintiff reported that her grades are "okay." (*Id.*)

Accordingly, the Court finds that the ALJ's credibility assessment is supported by substantial evidence. When the evidence of record "permits us to glean the rationale of an ALJ's decision, we do not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to

a conclusion of disability." *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Here, the ALJ complied with the Regulations and articulated the inconsistencies upon which he relied in discrediting Plaintiff's allegations of disabling impairments.

For these reasons, the ALJ's credibility assessment was supported by substantial evidence, and remand is not necessary on this basis.

**ACCORDINGLY**, it is

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 12) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 16) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying disability benefits is **AFFIRMED**; and it is further is

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.

Dated: March 31, 2016
       Syracuse, New York

                                            Hon. Glenn T. Suddaby
                                            Chief U.S. District Judge